# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENWOOD DIVISION

| | | |
|---|---|---|
| Capitol Specialty Insurance Corporation, | ) | Civil Action No. 8:14-cv-00255-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Ellis Wise Landscaping, Inc., and Rodney Dawkins, | ) | **ORDER AND OPINION** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Capitol Specialty Insurance Corporation ("CSIC") filed this declaratory judgment action against Defendants Ellis Wise Landscaping, Inc. ("EWLI"), and Rodney Dawkins ("Dawkins") (collectively "Defendants") seeking a declaration by the court that CSIC does not have an obligation to provide coverage to EWLI under commercial general liability insurance policy number CS02082081-02 (the "CGL Policy"), which policy was issued by CSIC to EWLI. (ECF No. 1.) Specifically, CSIC asks the court to declare that it is "under no obligation or duty to defend and/or indemnify . . . Defendants in any manner regarding the [Underlying] Lawsuit, or any judgment arising therefrom." (Id. at 6.)

This matter is before the court on CSIC's Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56 ("Rule 56 motion"). (ECF No. 31.) EWLI opposes the Rule 56 motion. (ECF No. 33.) For the reasons set forth below, the court **GRANTS** CSIC's Rule 56 motion.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

EWLI is a South Carolina corporation that provides landscaping services including "tree trimming and removal, backhoe work, bush hogging, stump grinding, and grading." (ECF No. 31-1 at 6:13–17; ECF No. 1 at 1 ¶ 2; ECF No. 12 at 1 ¶ 3.) In order to perform its operations, EWLI regularly utilized the same two or three individuals, including Dawkins, and paid them an

hourly figure of approximately $9.00 or $10.00 per hour of work. (ECF No. 31-1 at 3:1–12, 4:10–24, & 15:2–22.) EWLI did not provide landscaping services every day, but it would use the same individuals when the company serviced a client. (Id. at 10:6–12:9.) The individuals working for EWLI used equipment and tools (gas pole saws, hand chain saws, a backhoe, and dump truck) owned by the company. (Id. at 7:6–8:19.)

CSIC issued to EWLI the CGL Policy with effective dates of October 25, 2012 to October 25, 2013, with a limit of $500,000.00 per occurrence and general aggregate limits of $1,000,000.00. (ECF No. 1-2 at 19.) The CGL Policy contains an Endorsement on form CGL 399 (06-11), which states in relevant part:

### THIRD PARTY OVER ACTION EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**Section I – Coverages** is amended as follows:

A.   Exclusions **e.** under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability is replaced by the following:

   2.   Exclusions

   This insurance does not apply to:

   e.   Employer's Liability

   Bodily injury, personal injury, or advertising injury to:

   (1)   An employee of any insured arising out of and in the course of employment,

   (2)   The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

   This exclusion applies:

2

>   (1) Whether an insured may be liable as an employer or in any other capacity;
>
>   (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury; and
>
>   (3) To any insured against whom a claim is made or suit is brought for such bodily injury, personal injury or advertising injury, whether by or on behalf of an employee of that insured or any other insured.
>
>   For purposes of this exclusion the term "employee" includes loaned, rented, leased or temporary employees, as well as persons who qualify as borrowed servants or employees or persons who are or may be deemed employees of any insured under the doctrines of borrowed servant, borrowed employees, borrowed employee, respondent superior or any similar doctrine, or for whom any insured may be held liable as an employer.

(ECF No. 1-4 at 4.) The parties agree that the CGL Policy was formed and delivered in South Carolina. (ECF Nos. 31 at 1 & 33 at 6.) In addition, CSIC expressly consented to suit "in the courts for the county(s) where the insurance provides coverage." (ECF No. 1-2 at 8.)

On or about December 7, 2012, Dawkins suffered a crushing injury to his right hand, arm, and fingers while working for EWLI when his hand was caught in the bucket of a backhoe. (ECF No. 31-2 at 8:10–11:9.) As a result of the accident, Dawkins had to have his right ring finger and right long finger amputated. (ECF No. 1-1 at 5 ¶ 4.) Subsequently, Dawkins filed a workers' compensation claim, which claim was denied by the South Carolina Workers' Compensation Commission on February 24, 2014.[1] (ECF No. 18-2.)

On September 12, 2013, Dawkins filed a lawsuit against EWLI in the Richland County (South Carolina) Court of Common Pleas captioned <u>Rodney Dawkins v. Ellis Wise Landscaping, Inc.</u>, Case No.: 2013-CP-40-5545 (Richland Cnty. C.P. Sept. 12, 2013) (hereinafter the

---

[1] The Commission determined that EWLI was exempt from the South Carolina Workers' Compensation Act pursuant to S.C. Code Ann. § 42-1-360(2) (2014) because the company did not regularly employ 4 or more employees. (<u>See</u> ECF No. 18-2 at 3–4.)

"Underlying Lawsuit").  (ECF No. 1-1.)  Dawkins sought monetary damages from EWLI alleging negligence, gross negligence and reckless conduct.  (Id. at 6–7.)  As a result of the Underlying Lawsuit, EWLI notified CSIC of Dawkins' claims and CSIC responded by providing a defense to EWLI of the Underlying Lawsuit pursuant to a complete reservation of rights.  (ECF No. 7-3.)

CSIC filed the instant declaratory judgment action in this court on January 30, 2014.  (ECF No. 1.)  On March 6, 2014, CSIC filed its first Rule 56 motion.  (ECF No. 7.)  EWLI answered the Complaint on April 7, 2014, and counterclaimed seeking a declaration that the CGL Policy requires CSIC to provide a defense and indemnify EWLI as to Dawkins' claims in the Underlying Action.  (ECF No. 12.)  EWLI filed opposition to CSIC's first Rule 56 motion on April 28, 2014, to which CSIC filed replies in support of its first Rule 56 motion on May 2 and June 4, 2014.  (ECF Nos. 18, 19, 20.)  On June 4, 2014, EWLI filed an objection to CSIC's supplemental support for its Rule 56 motion.  (ECF No. 21.)  On October 6, 2014, the court held a hearing on the first Rule 56 motion.[2]  (ECF No. 24.)  On March 20, 2015, the court entered an Order denying CSIC's first Rule 56 motion on the basis that the court could not determine "whether Dawkins was an employee of EWLI for purposes of the Third Party Over Action Exclusion in the CGL Policy."  (ECF No. 28 at 11.)

After the parties engaged in a period of discovery, CSIC filed its second Rule 56 motion on May 28, 2015.  (ECF No. 31.)  EWLI filed opposition to CSIC's second Rule 56 motion on June 12, 2015, to which CSIC filed a reply in support of its second Rule 56 motion on June 19, 2015.  (ECF Nos. 33, 35.)  Thereafter, the court received argument from the parties regarding the second Rule 56 motion on August 4, 2015.  (ECF No. 39.)

---

[2] Additionally, CSIC filed supplemental documentation in support of summary judgment on December 17, 2014, and EWLI responded with additional filings on December 19, 2014. (ECF Nos. 25, 26, 27.)

## II.     JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) based on CSIC's allegations that "the action is between citizens of different states and the amount in controversy is in excess of $75,000, exclusive of costs and interest."  (See ECF No. 1 at 2 ¶ 5.)

## III.     LEGAL STANDARD

A.     Declaratory Judgment Actions

Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'"  Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)).  Courts have long interpreted the Act's permissive language "to provide discretionary authority to district courts to hear declaratory judgment cases."  United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998).  "[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"  Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).

B.     Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

5

R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson, 477 U.S. at 252; Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. The Cmty. Coll. of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

C.     General Principles of South Carolina Insurance Law

Under South Carolina law, insurance policies are subject to the general rules of contract construction. B.L.G. Enters., Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." Id. The court must enforce, not write, contracts of insurance and must give

6

policy language its plain, ordinary, and popular meaning. Id. "[I]n construing an insurance contract, all of its provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity." Yarborough v. Phoenix Mut. Life Ins. Co., 225 S.E.2d 344, 348 (S.C. 1976). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Hawkins v. Greenwood Dev. Corp., 493 S.E.2d 875, 878 (S.C. Ct. App. 1997). "Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." Poston v. Nat'l Fid. Life Ins. Co., 399 S.E.2d 770, 772 (S.C. 1990).

An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. S.C. Ins. Co. v. White, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990). A policy clause extending coverage must be liberally construed in favor of coverage, while insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. M&M Corp. of S.C. v. Auto–Owners Ins. Co., 701 S.E.2d 33, 35 (S.C. 2010); Owners Ins. Co. v. Clayton, 614 S.E.2d 611, 614 (S.C. 2005). "However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties." S.C. Farm Bureau Mut. Ins. Co. v. Wilson, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001).

"[E]xclusions in an insurance policy are always construed most strongly against the insurer." Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co., 663 S.E.2d 492, 495 (S.C.

2008) (internal citation omitted).  However, even though "exclusions in a policy are construed against the insurer, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or a statutory prohibition." S.C. Farm Bureau Mut. Ins. Co. v. Dawsey, 638 S.E.2d 103, 104 (S.C. Ct. App. 2006) (citing B.L.G. Enters., 514 S.E.2d at 330).  Moreover, the "court should not torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties." State Auto Prop. & Cas. Co. v. Brannon, 426 S.E.2d 810, 811 (S.C. Ct. App. 1992).

D.     Coverage Questions, the Duty to Defend, and the Duty to Indemnify Under South Carolina Law

Under South Carolina law, questions of coverage and the duty to defend under an insurance policy generally are determined by the allegations of the complaint.  See Jessco, Inc. v. Builders Mut. Ins. Co., No. 10-1215, 2012 WL 1035721, at *2 (4th Cir. Mar. 29, 2012).  If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend.  See City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund, 677 S.E.2d 574, 578 (S.C. 2009) (citation omitted).  Although a determination of an insurer's duty to defend is dependent upon the insured's complaint, an analysis of this duty involves the allegations of the complaint and not the specifically identified causes of action.  Id. at 579; see also Collins Holding Corp. v. Wausau Underwriters Ins. Co., 666 S.E.2d 897, 899-900 (S.C. 2008).  Moreover, an insurer's duty to defend may also be determined by facts outside of the complaint that are known by the insurer.  See USAA Prop & Cas. Ins. Co. v. Clegg, 661 S.E.2d 791, 798 (S.C. 2008).  If an insured has no duty to defend, it will know that it has no duty to indemnify. See Am. S. Ins. Co. v. Moras Roofing, LLC, No. 2:09-1966-PMD, 2010 WL 2710588, at *4 (D.S.C. July 7, 2010).

Under South Carolina law, a liability insurer's duty to indemnify is determined by the

8

findings of the fact finder in the underlying case.  Ellett Bros., Inc. v. U.S. Fid. & Guar. Co., 275 F.3d 384, 388–89 (4th Cir. 2001) (citing Jourdan v. Boggs/Vaughn Contracting, Inc., 476 S.E.2d 708, 711 (S.C. Ct. App. 1996)).  In other words, "[t]here is no obligation to defend until an action is brought and no obligation to indemnify until a judgment against the insured is obtained."  See Howard v. Allen, 176 S.E.2d 127, 129 (S.C. 1970).

## IV.    ANALYSIS

A.    The Parties' Arguments

In its Rule 56 Motion, CSIC argued that it does not have a duty to either defend or indemnify EWLI because Dawkins was an employee of EWLI under both the terms of the CGL Policy and as defined by South Carolina statutory law[3] and, therefore, his injuries are unambiguously excluded from coverage by the Third Party Over Action Exclusion.  (ECF No. 31 at 1.)  In support of this argument, CSIC asserted that Dawkins was EWLI's employee under the plain and unambiguous terms of the CGL Policy which defined an employee as including (1) "loaned, rented, leased or temporary employees, as well as persons who qualify as borrowed servants or employees or persons who are or may be deemed employees of any insured under the doctrines of borrowed servant, borrowed employees, borrowed employee, respondent superior or any similar doctrine," and (2) any person "for whom any insured may be held liable as an employer."  (ECF Nos. 31 at 10 & 35 at 6 (referencing ECF No. 1-4 at 4).)  CSIC further asserted that Dawkins was clearly an employee of EWLI as defined by S.C. Code Ann. § 42-1-130 (2014) because he was a "regularly hired" employee as opposed to a casual employee and he

---

[3] "The term 'employee' means every person engaged in an employment under any appointment, contract of hire, or apprenticeship, expressed or implied, oral or written, . . . but excludes a person whose employment is both casual and not in the course of the trade, business, profession, or occupation of his employer; . . . ."  S.C. Code Ann. § 42-1-130 (2014).

9

was clearly performing acts within the "course of the trade, business, profession, or occupation of his employer [EWLI]."  (ECF No. 31 at 14.)

CSIC also argued that Dawkins' injuries are excluded under a separate Contractors Designated Operations/Activities Exclusion of the CGL Policy, which exclusion provides that the insurance coverage does not "apply to 'bodily injury' or 'property damage' arising out of 'your work' shown in the Schedule."  (Id. at 16 (referencing ECF No. 1-3 at 23).)  In this regard, "Your work" as it applied to EWLI included "[t]ree trimming/[r]emoval; backhoe work; bush hogging; stump grinding."  (See ECF No. 1-3 at 23.)

As a result of the foregoing, CSIC argued that "because there is no possibility of coverage under the allegations of the [underlying] complaint," it has neither an obligation to defend EWL in the Underlying Lawsuit or indemnify it.  (Id. at 17 (citation omitted).)  Accordingly, CSIC prayed that the court would grant its Rule 56 motion.  (Id. at 17–18.)

EWLI opposed the pending Rule 56 motion on the basis that Dawkins was not an employee either under South Carolina law or the plain language of the policy.  (ECF No. 33 at 7–10.)  Specifically, EWLI claimed that Dawkins was not an employee because (1) he did not work a regular schedule; (2) he did not qualify under the CGL Policy as a loaned employee, a rented employee, a leased worker[4], a temporary worker[5], or a borrowed servant; and (3) his work was casual, "irregular, unpredictable, sporadic and brief in nature" since he "chose whether he wanted to work and controlled how many hours he remained on the job site."  (Id. at 7–9 (citing, e.g., S.C. Code Ann. § 42-1-130 (2014) ("The term 'employee' means every person engaged in

---

[4] "'Leased worker' means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business."  (ECF No. 1-3 at 11.)  "'Leased worker' does not include a 'temporary worker'."  (Id.)  "'Employee' includes a 'leased worker'."  (Id. at 10.)

[5] "'Temporary worker' means a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short term workload conditions."  (Id. at 12.)  "'Employee' does not include a 'temporary worker'."  (Id. at 10.)

10

an employment under any appointment, contract of hire, or apprenticeship, expressed or implied, oral or written, . . . but excludes a person whose employment is both casual and not in the course of the trade, business, profession, or occupation of his employer; . . . ."); Smith v. Coastal Tire & Auto Serv., 207 S.E.2d 810, 811–12 (S.C. 1974) ("Employment is 'casual' when it is irregular, unpredictable, sporadic and brief in nature . . . [and] [u]nder our decisions a casual employee is excluded from coverage [under Workers' Compensation Act] . . . .") (Internal citation omitted)).) EWLI then argued that because Dawkins could only be considered a casual employee, he was not an employee as that term is defined by either South Carolina law or the subject CGL Policy. (Id.)  Therefore, EWLI concluded that the CGL Policy does not exclude coverage and CSIC owes EWLI both the duty to defend and duty to indemnify.  (Id. at 10–11.)  Accordingly, EWLI requested that the court deny CSIC's Rule 56 motion.  (Id. at 12.)

In its Reply, CSIC argued that Dawkins clearly was an employee under S.C. Code Ann. § 42-1-130 (2014) because he admittedly "was performing work within the course of EWL[I]'s trade, business, profession, or occupation."   (ECF No. 35 at 3.)   CSIC further argued that Dawkins clearly was an employee under the CGL Policy because he was a "person . . . for whom [EWLI] may be held liable as an employer."   (Id. at 6 (referencing ECF No. 104 at 4).) Additionally, CSIC cited the court to the Sixth Circuit Court of Appeals' opinion in Western World Ins. Co. v. Hoey, 773 F.3d 755, 763 (6th Cir. 2014), in which that court analyzed similar policy language and affirmed the district court's finding that the defendant-appellant was an employee and her injuries were not covered by the policy.  (Id. at 8 (referencing ECF No. 25-1).) Finally, CSIC observed that EWLI failed to oppose CSIC's argument that the Contractors Designated Operations/Activities Exclusion of the CGL Policy specifically excluded coverage for bodily injury arising out of "tree trimming/removal" and "backhoe work."  (Id. at 10.)

11

B.      The Court's Review

The question before the court is whether Dawkins was an employee for purposes of the Third Party Over Action Exclusion of coverage for injuries suffered by the insured's employees. (See ECF No. 1-4 at 4.)  The CGL Policy does not specifically define the term "employee." Rather, it provides only that an "Employee" includes "leased workers," "loaned employees," "rented employees," "leased employees," "temporary employees," "borrowed servants," and "borrowed employees," but does not include a "temporary worker."  (Id.; see also ECF No. 1-3 at 10.)  Because the term "employee" is not specifically defined in the CGL Policy, the court must define the term pursuant to the common understanding of the term's significance to the ordinary person.  USAA Prop. & Cas. Ins. Co. v. Rowland, 435 S.E.2d 879, 881–82 (S.C. Ct. App. 1993); see also State Farm Fire & Cas. Ins. Co. v. Reed, C/A No. 7:07-2958-HFF, 2009 WL 735133, at *3 (D.S.C. Mar. 19, 2009) ("Courts may look to a dictionary to decipher the meaning of ambiguous, undefined terms.") (Citing Greenville Cnty. v. Ins. Reserve Fund, 443 S.E.2d 552, 553 (1994)).

An employee is statutorily defined in S.C. Code Ann. § 42-1-130 (2014) as "every person engaged in an employment under any appointment, contract of hire, or apprenticeship, expressed or implied, oral or written, . . . whether lawfully or unlawfully employed, but exclud[ing] a person whose employment is both casual and not in the course of the trade, business, profession, or occupation of his employer; . . . ."  Id.  Applying the aforementioned definition of "employee" to the instant issue of Dawkins' employment status, the court would be precluded from finding that Dawkins was an employee of EWLI if Dawkins' work for EWLI was casual and he performed work for EWLI that was not in the course of its trade, business, profession, or occupation.  Id.

Upon review of the evidence submitted by the parties, the court observes that the scope of EWLI's trade, business, profession, or occupation involved "tree trimming and removal, backhoe work, bush hogging, stump grinding, and grading." (See ECF No. 31-1 at 6:13–17.) In this regard, Dawkins testified that on the date of his accident, EWLI had been hired to remove trees, stumps, shrubbery, and other vegetation from an area that was going to be converted into a parking lot. (See ECF No. 31-2 at 3:5–4:23.) Dawkins further testified that at the time he was injured, he was attempting to cut a tree limb with a chain saw. (Id. at 8:10–11:9.) Upon consideration of Dawkins' testimony and other relevant evidence submitted by the parties, the court finds that Dawkins' employment was within the course of EWLI's trade, business, profession, or occupation. Therefore, the court concludes that Dawkins was an employee of EWLI under S.C. Code Ann. § 42-1-130 (2014) on December 7, 2012.

Because Dawkins at the time of his accident was an employee of EWLI under South Carolina law, the court concludes that Dawkins was an employee of EWLI for purposes of the Third Party Over Action Exclusion in the CGL Policy, which policy specifically excludes from coverage injury suffered by an employee of the insured.[6] (See ECF No. 1-4 at 4.) Accordingly, the court must grant CSIC's Rule 56 motion.

## V.    CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** CSIC's Motion for Summary Judgment. (ECF No. 31.) Accordingly, the court declares that CGL Policy No. CS02082081-02 issued to EWLI by CSIC does not provide coverage for the claims asserted in the Underlying Lawsuit. CSIC does not have any duty to either provide EWLI with a defense in the Underlying Lawsuit or indemnify EWLI for the amount of any judgment and other relief

---

[6] In reaching this conclusion, the court is not required to address CSIC's argument that it is also entitled to summary judgment because the Contractors Designated Operations/Activities Exclusion of the CGL Policy also excludes coverage. (See ECF No. 1-3 at 23.)

that might be entered against EWLI in the Underlying Lawsuit.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

October 20, 2015
Columbia, South Carolina